## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ROGER McCARTY,** | ) | |
| **K99232,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 24-cv-1378-RJD** |
| **vs.** | ) | |
| | ) | |
| **WEXFORD HEALTH SOURCES,** | ) | |
| **PHILLIP MARTIN,** | ) | |
| **CHAD JENNINGS,** | ) | |
| **S. IKNAYAN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM & ORDER

**DALY, Magistrate Judge:**

Plaintiff Roger McCarty, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Vienna Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Robinson Correctional Center[1] (Robinson). (Doc. 1). Specifically, Plaintiff alleges that the defendants were deliberately indifferent to his ongoing medical needs for his blood pressure.

The Complaint (Doc. 1) is now before the Court[2] for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for

---

[1] When Plaintiff filed this lawsuit he was housed at Robinson, however on June 11, 2024, he submitted a change of address that indicated he had relocated to Vienna. (Doc. 8).

[2] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint in light of his consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the Illinois Department of Corrections and Wexford and this Court.

money damages from a defendant who by law is immune from such relief must be dismissed.  28 U.S.C. § 1915A(b).  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff arrived at Robinson on December 5, 2022, and immediately complained that he was experiencing symptoms of high blood pressure.  (Doc. 1 at 6).  On January 18, 2023, he reported to the healthcare unit for a blood pressure check, at which time his blood pressure was 155/93.  He told the nurse that he had taken his blood pressure medication that morning as prescribed, but she reported that he had not and sent him back to his housing unit instead of addressing his symptoms.

On June 22, 2023, Plaintiff "fell completely out" and experienced dizziness and blurred vision.  A correctional officer had him "picked up" and taken to the healthcare unit.  Plaintiff explained to Defendant S. Iknayan (a nurse) that he believed his blood pressure was "peaking" based on symptoms from a prior stroke.  Iknayan manually measured his blood pressure so that he could not see the reading and told him it was "perfect."  Plaintiff doubted Iknayan's statement because his blood pressure had never been "perfect" since his stroke.  Iknayan gave Plaintiff 200mg of ibuprofen, which made his symptoms worse, and she sent him back to his housing unit. Plaintiff alleges he suffered the rest of the day with a headache, dizziness, and blurred vision.  He feared he was experiencing another stroke.  Plaintiff alleges that in the visit notes Iknayan falsely reported he had only a brief bout of dizziness and blurred vision and was instead overwhelmed by other personal issues.  He claims that reports from a mental health professional and the guard who sent him to the healthcare unit show the falsity of Iknayan's report.  (Doc. 1 at 6-7).

On July 18, 2023, Plaintiff experienced another blood pressure episode and was transported to the healthcare unit where his blood pressure was measured as 185/71. He was provided with aspirin and Motrin, his blood pressure was reported as dropping to 101/60, and he was returned to his housing unit. (Doc. 1 at 7).

On November 6, 2023, Dr. Becker (a non-party) discovered that Plaintiff had blockage in an artery in his neck. He prescribed 81mg of aspirin per day and directed that Plaintiff's blood pressure be checked at regular intervals. There was a second order in January of 2024 that Plaintiff's blood pressure be monitored at regular intervals in the following months. (Doc. 1 at 7). Plaintiff ultimately alleges that the orders to monitor his blood pressure were ignored. (Doc. 1 at 8). Plaintiff claims that he suffers from daily headaches, dizziness, blurred vision, other vision abnormalities, and a red face due to his high blood pressure. He lives in constant fear of experiencing another stroke. He claims that his grievances and requests for treatment have not resulted in care.

Plaintiff faults Wexford Health Sources for the implementation of their sick call procedure, whereby an inmate is required to be seen on nurse sick call three times before they are allowed to see a doctor. He alleges that each sick call takes about 2-3 weeks, and after three sick calls are completed, inmates are often then told there is no doctor or nurse practitioner available because Wexford has not staffed Robinson. He alleges that for the 17 months he had spent at Robinson as of the filing of his complaint, there was no doctor or nurse practitioner on staff. (Doc. 1 at 7). Plaintiff further alleges that Wexford's policies cause ineffective, delayed, and inadequate care, and that they maintain the policies to cut costs. (Doc. 1 at 8).

Plaintiff faults Defendant Phillip Martin, the healthcare unit administrator, for receiving numerous grievances about his blood pressure issues and incorrectly claiming that Plaintiff has not

had any issues since July of 2023.  (Doc. 1 at 8).  He also faults Defendant Chad Jennings, the Warden, for being fully aware of Plaintiff's need for care from highly detailed grievances that he has signed, and yet failing to render any aid.

In closing, Plaintiff alleges that as of April 2, 2024, his blood pressure reading was last taken on November 6, 2023, and that was the only time he had seen a doctor.  (Doc. 1 at 8). Plaintiff seeks injunctive relief in the form of "proper" care, and monetary damages.  (Doc. 1 at 9).

Based on the allegations in the Complaint, the Court designates the following claims:

**Claim 1:**     **Eighth Amendment deliberate indifference claim against Defendant Iknayan for the handling of Plaintiff's blood pressure spike on June 22, 2023;**

**Claim 2:**     **Eighth Amendment deliberate indifference claim against Defendants Martin and Jennings for having knowledge of Plaintiff's ongoing blood pressure issues from highly detailed grievances, but failing to act;**

**Claim 2:**     ***Monell* claim against Wexford for employing a sick call process that needlessly delays appointments and for failing to staff the Robinson healthcare unit with a doctor or nurse practitioner, which further inhibits access to care, as measures to cut costs.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court**.**  Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

DISCUSSION

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010). A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard). *Id.* To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). The "receipt of some medical care does not automatically defeat a claim of deliberate indifference." Edwards v. Snyder, 478 F.3d 827, 831 (7th Cir. 2007); *see also Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (prisoner need not show that his or her medical needs were "literally ignored"). Deliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, administers "blatantly inappropriate" medical treatment, *Edwards,* 478 F.3d at 831, acts in a manner contrary to the recommendation of specialists, *Arnett*, 658 F.3d at 753, or delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering. *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

Plaintiff's allegations in Claim 1 against S. Iknayan are sufficient to proceed beyond initial review. Additionally, Plaintiff's allegation that Defendants Martin and Jennings knew of his ongoing need for care and failed to act is sufficient to proceed under *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (if an official has actual knowledge of a serious medical condition through highly detailed grievances and fails to respond, an inmate may state a plausible claim that the official exhibited deliberate indifference by turning a blind eye to their plight).

Wexford is a private corporation that cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Thus, under *Monell*, for Plaintiff to recover from Wexford, he must show that the alleged constitutional violation was caused by: (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well-settled that it constituted a custom or practice; or (3) a person with final policymaking authority. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). In other words, a plaintiff must show that "systematic and gross deficiencies in …[IDOC's] medical care system," caused his injury, and also that "a policymaker or official knew about these deficiencies and failed to correct them." *Daniel v. Cook Cty.*, 833 F.3d 728, 735 (7th Cir. 2016). Alternatively, a plaintiff must show that "the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Dixon v. Cty. Of Cook*, 819 F.3d 343, 348 (7th Cir. 2016).

Here, Plaintiff's allegations are sufficiently detailed to suggest that Wexford's policy that required inmates to use the sick call process 2-3 times before seeing a doctor or nurse practitioner, coupled with the fact that no doctor or nurse practitioner was on staff, had the combined effect of depriving him care. He further alleges that these practices were in place to save costs. He claims that over a period of at least 17 months, he experienced multiple incidents of blood pressure irregularity consistent with a prior stroke, but he was only able to secure a single appointment with a doctor, and none of the follow-up care was implemented. These allegations are sufficient to suggest that the staffing situation and sick call process may have directly impacted Plaintiff's access to care. Thus, Claim 3 may proceed against Wexford.

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has moved for recruited counsel. (Docs. 3, 12). Plaintiff explains that he has tried to recruit his own counsel, and he attached proof of correspondence with counsel. (Doc. 12). There is no right to the appointment of counsel in civil matters. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Although Plaintiff has attempted to get his own counsel, the Court must also consider the complexity of his case, and the next steps that must be taken. Plaintiff explains that he has some high school education, and he is not familiar with the law. However, Plaintiff's case is still at the earliest stages of litigation, and Plaintiff's complaint was clear, easy to follow, and sufficient to state valid claims against all defendants. The next steps of the case will be guided by the Court, including service of process, and after answers are filed, an exchange of basic discovery. The Court finds that at this early juncture, Plaintiff is competent to pursue these tasks on his own, so his Motions (Docs. 3, 12) will be **DENIED** without prejudice. If Plaintiff later renews his motion, he should take care to explain which aspects of the case are posing difficulty for him.

### DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives initial screening as described above against Defendant S. Iknayan, **Claim 2** survives against Defendants Phillip Martin and Chad Jennings, and **Claim 3** survives against Wexford Health Sources.

The Clerk of Court is **DIRECTED** to prepare for Defendants S. Iknayan, Phillip Martin, Chad Jennings, and Wexford Health Sources: (1) Form 5 (Notice of a Lawsuit and Request to

Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other

change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA protective order.

Plaintiff's Motions for Recruitment of Counsel (Docs. 3, 12) are **DENIED** without prejudice.

**IT IS SO ORDERED.**

**Dated:  November 7, 2024**

                                        *s/ Reona J. Daly*
                                        **REONA J. DALY**
                                        **United States Magistrate Judge**

<u>**Notice to Plaintiff**</u>

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.